IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

|  |  |  |
|---|---|---|
| PAULA Y. WILLIAMS | ) | |
| Plaintiff, | ) | |
| v. | ) | 13 C 1116 |
| | ) | |
| COUNTY OF COOK, OFFICE OF THE | ) | |
| CHIEF JUDGE OF THE CIRCUIT COURT | ) | Judge Virginia M. Kendall |
| OF COOK COUNTY, COOK COUNTY | ) | |
| JUVENILE PROBATION DEPARTMENT | ) | |
| CHIEF EXECUTIVE OFFICE, MICHAEL | ) | |
| ROHAN, OFFICE of the INDEPENDENT | ) | |
| INSPECTOR GENERAL of COOK COUNTY | ) | |
| CHIEF EXECUTIVE OFFICER, AFSME | ) | |
| COUNCIL 31, LOCAL 3477 | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Paula Williams filed this suit *pro se* against Cook County, the Office of the Chief

Judge of the Circuit Court of Cook County, the Cook County Juvenile Probation Department (the

and its Chief Executive Officer, Michael Rohan, the Office of the Independent Inspector General

of Cook County (collectively the "County Defendants"), and two labor organizations, the

American Federation of State, County and Municipal Employees, Council 31 ("Council 31") and

the American Federation of State, County and Municipal Employees, Local 3477 ("Local 3477")

(collectively the "Union Defendants"). Williams alleges she was discriminated against based on

her age in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. §

621 *et seq*; her sex in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et*

*seq*; and her race, color, and national origin in violation of Title VII of the Civil Rights Act of 1964

and 42 U.S.C. §§ 1981 and 1983. Williams also alleges that the defendants retaliated against her

for asserting rights protected under the above statutes and refused to honor the Illinois Worker's

Compensation Act ("IWCA") by terminating her employment while she was on worker's compensation leave. The Union and County Defendants move separately to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief may be granted. The Court dismisses all of Williams's claims except for her Title VII race discrimination, Title VII retaliation, and IWCA claims against the Cook County Juvenile Probation Department.

## STATEMENT OF FACTS

The following facts are taken from Williams's Complaint and attached exhibits and are assumed to be true for purposes of this Motion to Dismiss. *See Tamayo v. Blagoyevich*, 526 F.3d 1074, 1081 (7th Cir. 2008). In this case, Williams's Complaint states the legal bases for her claims but contains very few detailed factual allegations. Thus, the majority of the facts have been drawn from exhibits attached to the Complaint. *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) ("In considering a motion to dismiss under Rule 12(b)(6), district courts are free to consider …. exhibits attached to the complaint, or documents referenced in the peadings if they are central to the claim.") (internal citations and quotations omitted); *Reger Development, LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010) ("[On a 12(b)(6) motion to dismiss], [w]e consider documents attached to the complaint as part of the complaint itself."). All reasonable inferences are drawn in favor of Williams, the non-moving party. *See Killingsworth v. HSBC Bank*, 507 F.3d 614, 618 (7th Cir. 2007) (citing *Savory v. Lyons*, 469 F.3d 667, 670 (7th Cir. 2006)).

Paula Williams is a former employee of the Cook County Juvenile Probation Department and began her employment as a probations officer on November 17, 1995. (Dkt. No. 1, p. 7.) On

December 8, 2008, Williams complained to Charles Young, the Assistant Director of Probation Services, that she was being subjected to racial harassment and discrimination in the workplace. (*Id.* at 7.)   Williams informed Young via memorandum that on December 4, 2008, two officers, Robin Petchenik and Georgann Struss, stated to her that "when you go black you never go back and when you are white, you are always right." (*Id.* at 9.)   Williams states that these comments did not seem harmless and that she interpreted them "with the same venomous tone that [she could] only remember seeing on the television when Klu Klux Klan meetings were shown." (*Id.*)

Williams sent a copy of her memorandum to Defendant Michael Rohan, the then-Director of Probation and Court Services (*Id.* at 10–11.)   Rohan confirmed receipt of Williams's complaint on December 10, 2008 and responded that the "department does not condone such behavior" and that the "comments appear[ed] to be out of character for the individuals [Williams] attributed them to." (*Id.* at 11.)   Rohan also indicated that he had asked Young to contact her immediately to "ascertain additional facts so that he might initiate an investigatory meeting involving the two officers" against whom the charges were made. (*Id.*)   In May 2009, an investigative interview was conducted with Young and Rose Marie Golden, the then-Human Resource Deputy for the Probation Department. (*Id.* at 14.)   Williams's Complaint does not contain any factual allegations detailing what if anything transpired at that interview or whether Rohan took any further action.

On March 17, 2010, Human Resource Administrator Bruce Wisniewski informed Williams that her presence was required at an investigative interview. (*Id.* at 19.)   Williams was informed that she had a right to union representation per the terms of her collective bargaining agreement and that her union had been made aware of the meeting. (*Id.* at 19.)   Williams was notified by Independent Inspector General Patrick Blanchard that the meeting was to take place on

March 26, 2010 at 10:30am. (*Id.* at 20.)   The Complaint does not contain any details regarding the nature of the investigative interview or whether it was related to Williams's previous allegations.

On May 27, 2010, Williams suffered injuries to her spine and right arm when a co-worker, Anthony Jordan, "yanked [a] door open as [Williams] entered [the] office." (*Id.* at 22, 25.)   On August 3, 2010, Williams filed a Petition for an Immediate Hearing with the Illinois Workers' Compensation Commission. (*Id.* at 22.)   Williams subsequently went on medical leave and was placed under the care of Dr. Ignas Laubanaukas, an orthopedic surgeon. (*Id.* at 28.)   Near the end of her treatment, Williams was seen by Dr J. Mankowski, Cook County's in-house physician. (*Id.* at 24, 27.)   On August 1, 2011, Dr. J. Mankowski issued a "Physician's Approval to Medical Division – Return to Work" letter from the Cook County Department of Human Resources. (*Id.* at 24.)   Dr. Mankowski stated that her opinion Williams could return to work on August 2, 2011. (*Id.* at 24.)   Dr. Mankowski also stated that she had advised Williams to report to her personnel department. (*Id.*)   Upon receiving this opinion, Williams saw her treating physician, Dr. Laubanakas, who prepared a Work Status Report dated August 11, 2011 recommending Williams return to work on September 3, 2011. (*Id.* at 23.)   Williams chose to follow the advice of her treating physician and did not return to work on August 2. (*Id.* at 28.)   Andrew Marzal, the attorney representing Williams in her workman's compensation proceedings, informed Assistant State's Attorney Jeremy Schwartz of this development and conveyed that Williams would return to work on September 6, 2011.[1] (*Id.* at 28.)   According Marzal's letter to Becerra, Schwartz did not disagree with this. (*Id.*)

On August 30, 2011, Williams was discharged from her employment by Rose Marie Golden, who was at this point the Director of Human Resources. (*Id.* at 8.)   The stated reason for

---

[1] September 3, 2011 fell on the Saturday before Labor Day.   Tuesday, September 6, 2011 was the first business day following Williams's recommended date of return.

Williams's termination was failure to return to work from medical leave, or "job abandonment." (*Id.*) Williams filed a Complaint Form with the Cook County Office of the Independent Inspector the next day. (*Id.* at 26.) Williams alleged in her Complaint Form that the real reason for her termination was that she made phone calls to the Cook County Inspector General's Office to report that county employees were "conducting political activity on county time and using county equipment for the same." (*Id.* at 26.) Williams also asserted her belief that both her termination and her injury at work were retaliatory acts in response to her cooperation with the Cook County Inspector General. (*Id.*) Lastly, Williams asserts that her termination was unlawful because she was on worker's compensation as of the date of her termination for failure to return from medical leave.

On October 12, 2011 Williams filed a charge with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC") alleging claims of unlawful retaliation. Williams listed the Cook County Juvenile Probation Department as the sole respondent in the charge and did not name the Union Defendants or the other County Defendants. (*Id.* at 7.) On November 15, 2012, Williams received her right-to-sue letter from the U.S. Department of Justice–Civil Rights Division. (*Id.* at 12.) The letter stated that Williams had a right to institute a civil action under Title VII of the Civil Rights Act against "the above-named respondent." (*Id.*) "Cook County Juvenile Probation Department" was the only respondent named in the letter. (*Id.*)

## **STANDARD OF REVIEW**

When considering a motion to dismiss under Rule 12(b)(6), the Court accepts as true all facts alleged in the complaint and construes all reasonable inferences in favor of the plaintiff.

*Killingsworth*, 507 F.3d at 618 (citing *Savory*, 469 F.3d at 670); *accord Murphy*, 51 F.3d at 717. To state a claim upon which relief can be granted, a compliant must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). "Detailed factual allegations" are not required, but the plaintiff must allege facts that when "accepted as true . . . 'state a claim to relief that is plausible on its face.' " *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). To determine whether a complaint meets this standard, the "reviewing court [must] draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 678.

Federal Rule of Civil Procedure 8(a)(2) imposes "two easy-to-clear hurdles" that a complaint must satisfy in order to survive a motion to dismiss pursuant to Federal Rule of Procedure 12(b)(6). *Tamayo*, 526 F.3d at 1084 (quoting *EEOC v. Concentra Health Svcs., Inc.*, 496 F.3d 773, 776 (7th Cir. 2007). First, a complaint must describe the plaintiff's claims and the grounds supporting them in "sufficient detail to give the defendants fair notice" of the claims alleged against them. This requires more than mere "labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Concentra*, 496 F.3d at 776. Second, to survive a motion to dismiss, the court determines whether the well-pleaded allegations, if true, "plausibly suggest a right to relief, raising that possibility above a speculative level." *See Iqbal*, 556 U.S. at 679; *Concentra*, 496 F.3d at 776. If a complaint does not satisfy these two criteria, "the plaintiff pleads itself out of court." *Concentra*, 496 F.3d at 776. Accordingly, a motion to dismiss may be properly granted where the plaintiff does not allege a plausible entitlement to relief either by (1) failing to provide the defendant with notice of plausible claims against it or (2) asserting only speculative or conclusory allegations in the complaint.

## DISCUSSION

**I.      Title VII and ADEA Claims**

Title VII and the ADEA require plaintiffs seeking to pursue claims in federal court to first file a charge with the EEOC. *Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 920 (7th Cir. 2000). A party not named in an EEOC charge may not be sued under Title VII or the ADEA. *Alam v. Miller Brewing Co.*, 709 F.3d 662, 666 (7th Cir. 2013); *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126 (7th Cir. 1989); *Bright v. Roadway Services, Inc.*, 846 F.Supp. 693, 696 (N.D. Ill. 1994) ("Because ADEA and Title VII share a common purpose and because the filing requirements of the two statutory schemes are similar, this principal applies with equal force to actions brought under the ADEA.") (citing *Oscar Mayer & Co. v. Evans*, 441 U.S. 750, 755–56 (1979), and *Pauls v. Elaine Revell, Inc.*, 571 F.Supp. 1018, 1020 (N.D. Ill. 1983)).   There is one exception to this rule: if "an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in the conciliation proceedings aimed at voluntary compliance," that party may be sued notwithstanding the plaintiff's failure to name that party in his or her EEOC charge. *Schnellbaecher*, 887 F.2d at 126–127 (quoting *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 905 (7th Cir. 1981)).

In this case, Williams has attached to her Complaint an EEOC charge and right-to-sue letter.   Both documents name the Cook County Juvenile Probation Department as the sole respondent.   Williams also submitted with her brief in opposition to the Union Defendants' Motion to Dismiss the Employment Complainant Information Sheet (the "Intake Form") filed with the IDHR. (Dkt. No. 13, p. 4.).   Like the EEOC Charge and right-to-sue letter, the Intake Form

names only the Cook County Probation Department as a respondent. Furthermore, Williams has

not demonstrated that Council 31, Local 3477, or the other County Defendants were provided

adequate notice of her charge or given an opportunity to participate in conciliation proceedings

before she filed her federal complaint. Accordingly, Williams may proceed with her Title VII

and ADEA claims against the Probation Department but cannot move forward against the

remaining Defendants.[2]

### A. Williams's Reference to the Union Defendants in Her Intake Form is Insufficient to Exhaust Administrative Remedies

According to Williams, the Union Defendants should not be dismissed in light of the

allegations contained in her Intake Form. Williams states in the form that she "[w]ent to County

Inspector General regarding harassment at work and home from Union Reps." (Dkt. No. 13, p. 4.)

As a general matter, intake forms and questionnaires are insufficient to satisfy the charge-filing

requirement. *See Novitsky v. American Consulting Engineers, L.L.C.*, 196 F.3d 699, 702 (7th Cir.

1999) ("Under the statute, however, it is the charge rather than the questionnaire that matters.

Only the charge is sent to the employer, and therefore only the charge can affect the process of

---

[2] There is no need to separately address Williams's Title VII and ADEA claims against Michael Rohan. To the extent these claims are asserted against Rohan in his individual capacity, the "case law is clear that a supervisor cannot be held liable in his individual capacity … under Title VII," *Silk v. City of Chicago*, 194 F.3d 788, 797 n.5 (collecting cases), or the ADEA, *Thelen v. Marc's Big Boy Corp.*, 64 F.3d 264, 267 n.2 (7th Cir. 1995) (suggesting that no individual liability exists for a supervisor under the ADEA); *see, e.g., Showalter v. Richmond*, No. 1:08-CV-666, 2010 WL 746785 (S.D. Ind. Feb. 26, 2010). To the extent Williams asserts these claims against Rohan in his official capacity as the Chief Executive Officer of the Probation Department, her claims against him are dismissed as redundant and unnecessary. *See, e.g., Offor v. Illinois Dept. of Human Services*, No. 11 C 7296, 2013 WL 170000, at *2 (N.D. Ill. Jan. 16, 2013) (dismissing as redundant plaintiff's claims against official-capacity defendants where plaintiff named entity defendant in suit); *Levin v. Madigan*, 697 F.Supp.2d 958, 973 (N.D. Ill. 2010) ("Where the plaintiff names the government entity as a defendant in the suit, the claim against the individual in her official capacity is redundant."); *Kielbasa v. Ill. E.P.A.*, No. 02 C 4233, 2003 WL 880995, at *3 (N.D. Ill. Mar. 2, 2003) (dismissing claims against agency's director in her official capacity as redundant to claims against the agency); *Berry v. Ill. Dept. of Human Services*, No. 00 C 5538, 2001 WL 111035, at *8 (N.D. Ill. Feb. 2, 2001) (since state agency is a defendant, claims against state officials in their official capacities were redundant and therefore dismissed).

conciliation.")[3] (citing 42 U.S.C. § 2000e-5(b), and *Perkins v. Silverstein*, 939 F.2d 463, 470 (7th Cir. 1991)); *Early v. Bankers Life and Cas. Co.*, 959 F.2d 75, 80 (7th Cir. 1992) ("To treat Intake Questionnaires willy-nilly as charges would be to dispense with the requirement of notification of the prospective defendant, since that is a requirement only of the charge and not of the questionnaire.").[4]   The Supreme Court softened this requirement in *Federal Express Corp. v. Holowecki*, 552 U.S. 389 (2008), holding that an intake form may be construed as a "charge" where the intake form contains sufficient detail and can reasonably be construed as a request by the employee for agency action. *Id.* at 405.

For two reasons, however, *Howlecki* does not change the outcome of the analysis in this case.   First, the Plaintiff in *Howlecki* filed an intake questionnaire and supplemental affidavit before filing her federal lawsuit but did not file her formal charge until after filing her complaint. *Id.* at 394, 406.   Here, Williams filed a formal charge with the EEOC and IDHR after completing her intake form and did not name or mention Council 31, Local 3477, or the County Defendants (with the exception of the Probation Department).   The Seventh Circuit has signaled—though not explicitly held—that this distinction is of consequence. *See Wojtanek v. Pactiv LLC*, 492 Fed.Appx. 650, at *2 (7th Cir. 2012) (unpublished) ("Although the Supreme Court has held [in *Howlecki*] that in some circumstances even an intake questionnaire can constitute a charge of

---

[3] *Novitsky* "does not prevent all *evidentiary* uses of EEOC questionnaires for other purposes, such as prior consistent statements when the plaintiff's credibility is disputed." *Xodus v. Wackenhut Corp.*, 619 F.3d 683, 687 (7th Cir. 2010) (emphasis in original).   Rather, it precludes attempts, as in this case, to "use an intake questionnaire to expand the *legal scope* of EEOC charges." *Id.* (emphasis in original).

[4] These courts assessed whether a plaintiff could rely on information stated in an intake form or questionnaire specifically; the cases do not suggest that *any* information submitted by a plaintiff that is not contained in the Charge Form will be disregarded. *See Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 –11 (7th Cir. 1992) (plaintiff's handwritten "EEOC Affidavit" submitted the same day as her EEOC charge allowed); *Box v. A & P Tea Co.*, 772 F.2d 1372, 1375 (7th Cir. 1985) (handwritten additions to typed charge allowed); *Sickinger v. Mega Systems, Inc.*, 951 F.Supp. 153, 157 – 58 (N.D. Ind. 1998) (Charge Questionnaire filled out the same day as the Charge Form was filed allowed under circumstances where the employer could not claim surprise at the claim stated fully in the questionnaire but not in the charge).

discrimination, … *the Court has not addressed the situation where the plaintiff has signed a formal charge of discrimination that narrows the allegations presented to agency officials.*") (emphasis added).   Indeed, only months after *Howlecki*, the Seventh Circuit rejected a plaintiff's contention that a particular defendant was on notice of her charge where the employer was named in the intake questionnaire but not in the formal charge. *Tamayo*, 526 F.3d at 1089.   The court held that "[a]ssertions in the questionnaire, without more, are not enough to put the [defendant] on notice that it was being charged." *Id.*

Though not binding on this Court, two other Circuits have held—post-*Howlecki*—that a claim listed in an EEOC intake form does not satisfy the charge-filing requirement where a subsequently filed charge does not include that claim. *See Green v. JP Morgan Chase Bank Nat'l Ass'n*, 501 Fed.Appx. 727, at *3 (10th Cir. 2012) (unpublished) (distinguishing *Howlecki* and holding that intake form does not satisfy charge-filing requirement where a claimant files an initial intake questionnaire *and* timely files a formal charge that becomes the basis of the agency's investigation, all before commencing a lawsuit, noting that "it would defeat the statutory scheme to find exhaustion where an employee includes a claim in the intake questionnaire, but then omits it in a timely subsequent formal charge that forms the basis for the administrative proceedings."); *Barzanty v. Verizon PA, Inc.*, 361 Fed.Appx. 411, 415 (3d Cir. 2010) (unpublished) (rejecting plaintiff's argument that her EEOC intake questionnaire satisfied the exhaustion requirement where plaintiff subsequently filed a formal charge, reasoning that the EEOC Charge Form and the Intake Questionnaire serve different purposes: An Intake Questionnaire facilitates "pre-charge filing counseling" and allows the Commission to determine whether it has jurisdiction to pursue a charge; an EEOC Charge Form serves to define the scope of the Commission's investigation and

to notify the defendant of the charges against it). The Seventh Circuit's guidance following *Howlecki* as well as *Barzanty* and *Green*, which the Court finds persuasive, lead this Court to conclude that Williams "cannot be allowed to transfer the allegations mentioned only in the questionnaire to the charge itself. Not only would this be circumventing the role of the Commission, but it would be prejudicial to the [defendants]." *Barzanty*, 361 Fed.Appx. at 415.

Even if this Court were to adopt an expansive reading of *Howlecki* and assume the Supreme Court intended to allow plaintiffs to use allegations contained in an intake form to satisfy the charge-filing requirement even where the plaintiff later narrows those allegations in a formal charge, Williams has failed to provide in her Intake Form the level of detail necessary to satisfy the charge-filing requirement with respect to the Union Defendants. Even *Howlecki* made clear that "the agency is not required to treat every completed Intake Questionnaire as a charge." *Id.* at 405. Instead, the Court must look to whether the filing contains the information required by the agency's regulations and can be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Id.* at 402. In *Howlecki*, the intake form contained detailed information pertaining to the defendant, including the respondent's name, address, telephone number, an allegation of the nature of the discrimination being alleged, and a six-page affidavit requesting the agency take action against the respondent "to end their age discrimination." *Id.* at 405. Williams's Intake Form, which simply references "Union Reps," contains nowhere close to this level of detail regarding Council 31 and Local 3477. Williams does not name either Council 31 or Local 3477 in her Intake Form or make any factual allegations against either entity. Therefore Williams's general reference to "Union Reps" in the Intake Form is insufficient to satisfy the requirement that

a defendant be named a respondent in an EEOC charge before being named a defendant in a federal lawsuit. Williams, having failed to mention–much less name as respondents–the Union Defendants in her EEOC Charge Form, cannot now rely on this vague reference to satisfy the exhaustion requirement and bring Title VII and ADEA claims against Council 31 and Local 3477.Additionally, because Williams failed to name as respondents or mentioned Cook County, the Office of the Chief Judge of the Circuit Court of Cook County, or the Office of the Independent Inspector General of Cook County in her EEOC Charge Form or Intake Form, she cannot sustain Title VII or ADEA claims against those entities.

**B.    William's has Exhausted Her Administrative Remedies for Her Race and Discrimination and Retaliation Claims**

Williams named the Probation Department as a respondent in her EEOC Charge and has thus sufficiently exhausted her administrative remedies against that defendant. However, even where administrative remedies are exhausted, a plaintiff may only bring claims that were included in the original EEOC Charge. *Sitar v. Indiana Dept. of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003); *Ajayi v. Aramark Business Services, Inc.*, 336 F.3d 520, 527 (7th Cir. 2003) ("[T]he issue often isn't simply whether or not the plaintiff ever filed an EEOC charge, but rather whether the charge that was timely filed was sufficiently broad to include the claims the plaintiff later raises in Court."). In this case, Williams alleges the following in her EEOC Charge:

> I.   A.   ISSUE/BASIS
>      DISCHARGE – AUGUST 30, 2011, IN RETALIATION FOR
>      OPPOSING DISCRIMINATION
>
>      B.   PRIMA FACIE ALLEGATIONS
>      1. On December 8, 2008, I engaged in a protected activity when I complained to Charles Young, the Assistant Director of Probation Services that I was being subjected to racial harassment and discrimination in the work place.

> 2. My job performance as a juvenile probation officer met
>    Respondent's expectations.   I was hired on November 17, 1995.
>
> 3. On August 30, 2011, I was discharged by Rose Marie Golden,
>    Director of Human Resources.   The reason given was failure to
>    return to work from medical leave (job abandonment).
>
> 4. The discharge followed my participation in a protected activity
>    within such a period of time as to raise an inference of retaliatory
>    motivation.

(Dkt. 1, p. 7.)   In the portion of the Charge listing the "Cause of Discrimination," Williams lists

only "Retaliation." (*Id.*)   Williams does not state that her race, age, color, national origin, or

gender were a cause of the discrimination.

Courts have "adopted a liberal standard for reviewing the scope of an EEOC charge."

*Farrell v. Butler Univ.*, 421 F.3d 609, 616 (7th Cir. 2005).   Accordingly, "the judicial complaint

in a Title VII case can embrace not only the allegations in the administrative charge but also

'discrimination like or reasonably related to the allegations in the charge and growing out of such

allegations.' " *Malhotra v. Cotter & Co.*, 885 F.2d 1305, 1312 (7th Cir. 1989) (quoting *Hemmige v.

Chicago Public Schools*, 786 F.2d 280, 283 (7th Cir. 1986)), *superseded on other grounds by

statute as stated in Rush v. McDonald's Corp.*, 966 F.2d 1104, 1119–20 (7th Cir. 1992).   "When

an EEOC charge alleges a particular theory of discrimination, allegations of a different type of

discrimination in a subsequent complaint are not reasonably related to them unless the allegations

in the complaint can be reasonably inferred from the facts alleged in the charge." *Cheek v. Western

and Southern Life Ins. Co.*, 31 F.3d 497, 503 (7th Cir. 1994).   This approach prevents plaintiffs

from "circumvent[ing] the EEOC's investigatory and conciliatory role and depriv[ing] the charged

party of notice of the charge," *Steffen v. Meridian Life Ins. Co.*, 859 F.2d 534 (7th Cir. 1988)

(quoting *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985)), but also recognizes that

a majority of Title VII plaintiffs are laypersons who traditionally complete their EEOC charge without the assistance of a lawyer. *Taylor v. Western and Southern Life Ins. Co.*, 996 F.2d 1188, 1195 (7th Cir. 1992). Courts apply a two-part test to determine whether allegations made in a complaint are within the scope of the initial EEOC charge. *See Cheek*, 31 F.3d at 500; *Jenkins v. Blue Cross Mut. Hosp. Ins.*, 538 F.2d 164, 167 (7th Cir. 1976). First, there must be a reasonable relationship between the allegations in the charge and the allegations in the complaint. *Cheek*, 31 F.3d at 500. Second, the claims in the complaint must be reasonably expected to grow out of an EEOC investigation of the allegations in the charge. *Id.* "To be 'like or reasonably related,' the claim and the EEOC charge 'must, at a minimum, describe the same conduct and implicate the same individuals.' " *Moore v. Vital Prods.*, 641 F.3d 253, 257 (7th Cir. 2011) (quoting *Cheek*, 31 F.3d at 501).

Although Williams did not list "race" as a basis for discrimination in "cause of discrimination" field of her EEOC Charge, the allegations in her narrative—that she was subjected to harassment and discrimination based on her race, engaged in protected activity by complaint to a supervisor, and was retaliated against as a result—indicate that her race discrimination claim is reasonably related to the unlawful retaliation claim alleged in her Charge. *See generally Kristufek v. Hussman Foodservice Co.*, 985 F.2d 364, 368 (7th Cir. 1993) ("What boxes … are checked on the EEOC form do not necessarily control the scope of a subsequent civil complaint."); *see, e.g., Jenkins*, 538 F.3d at 165, 168–69 (allowing plaintiff's sex discrimination claim to go forward where plaintiff only checked the EEOC form box indicating that she experienced discrimination based on "Race or Color" because the plaintiff's narrative stated that her superior "also accused [her] of being a leader of the girls on the floor").

However, neither the factual narrative nor causes of discrimination alleged in Williams's EEOC Charge could reasonably have led the Probation Department to conclude that Williams was a victim of age, color, national origin, or sex discrimination. The Charge is devoid of any reference to Williams's age, color, or national origin. Indeed with respect to her age, even the date-of-birth field in the charge form is left blank. *See Ajayi*, 336 F.3d at 527 (plaintiff's EEOC charges of discrimination based on national origin not related to his complaint in federal court under the ADEA where date-of-birth field was left blank, age-discrimination box was unchecked, and nothing about plaintiff's description of the charge "would have reasonably led one to conclude that [he] was a victim of age discrimination"). Nor does the charge state William's national origin or contain facts that might reasonably have led the EEOC and the Probation Department to learn that she was a victim of sex discrimination. Furthermore, an allegation of race discrimination does not automatically create the assumption that color is associated. *See, e.g., Howell v. Rush Copley Medical Group NFP*, No. 11 C 2689, 2012 WL 832830, at *3 (N.D. Ill. Mar. 12, 2012) (plaintiff's charge stating "I believe that I have been discriminated against because of my race, Black, in violation of Title VII" insufficient to allow federal suit alleging color discrimination because plaintiff "made no mention of the hue of her skin color," an EEOC investigation into her race discrimination charges "would not reasonably lead to an investigation into [the defendant's] conduct toward light-skinned individuals within her race," and "to the extent [she] intended to equate race with color in her charge, her color claim is duplicative of her race claim"); *Thompson v. Fairmont Chi. Hotel*, 525 F.Supp.2d 984, 989–90 (N.D. Ill. 2007) (EEOC charge alleging discrimination based on "my race, Black," insufficient to support a federal suit for color discrimination); *Sullivan v. Presstronics*, No. 96 C 7436, 1997 WL 327126, at *2 (N.D. Ill.

June 11, 1997) (dismissing Title VII action based on color discrimination where plaintiff complaint of race discrimination in his EEOC charge but did not give "the slightest indication that the particular hue of his skin had anything to do with the alleged discrimination"). Therefore, Williams has provided no notice to the EEOC and the Probation Department that discrimination based on color, national origin, age, and sex were issues for investigation and conciliation efforts. Accordingly, only her race discrimination and retaliation claims against the Probation Department may be brought in this federal suit under Title VII.

### C. Williams's Exhausted Title VII Claims Against the Probation Department Satisfy Rule 8's Minimum Pleading Requirements

Lastly, the Court must determine whether Williams's allegations of race discrimination and unlawful retaliation against the Probation Department satisfy Rule 8's minimum pleading requirements and thus survive County Defendants' motion to dismiss. The County Defendants maintain that Williams's Complaint fails to state a claim because she has not established that she was meeting her employer's legitimate expectations and that similarly situated persons not in her protected class were treated more favorably. This argument is misplaced, and the cases the County Defendants rely upon in support of their position are inapposite. The Seventh Circuit has repeatedly held "that a plaintiff alleging employment discrimination under Title VII may allege these claims quite generally." *Tamayo*, 526 F.3d at 1081. While "a complaint must contain something more than a general recitation of the elements of the claim," there is a "minimal pleading standard for simple claims of race and sex discrimination." *Id.* (citing *Concentra*, 496 F.3d at 781–82). The cases cited by the County Defendants were decided at the summary judgment stage of the proceeding. *See, e.g., McGowan v. Deere*, 581 F.3d 575, 579 (7th Cir. 2009); *Tubergen v. St. Vincent Hospital & Health Care Center Inc.*, 517 F.3d 470, 475 (7th Cir. 2008).

At that stage, the plaintiff must indeed, under the *McDonnell Douglas* burden-shifting framework, establish a *prima facie* case of discrimination under Title VII and the ADEA before the burden shifts to the defendant to demonstrate a permissible and nondiscriminatory reason for the adverse employment action. *See, e.g., McGowan*, 581 F.3d at 579 (Title VII race discrimination); *Hemsworth v. Quotesmith.Com, Inc.*, 476 F.3d 487, 492 (7th Cir. 2007) (ADEA). However it is well established that the *McDonnell Douglas* framework does not apply at the pleading stage. *See Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002) ("The prima facie case under *McDonnell Douglas* … is an evidentiary standard, not a pleading requirement …. This Court has never indicated that the requirements for establishing a prima facie case under *McDonnell Douglas* also apply to the pleading standard that plaintiffs must satisfy in order to survive a motion to dismiss."); *Luevano v. Wal-Mart Stores, Inc.*, --- F.3d ----, 2013 WL 3599156, at *10 (7th Cir. July 16, 2013); *see, e.g., Vega v. Chicago Park Dist.*, --- F.Supp.2d ----, 2013 WL 3866514, at *6 (N.D. Ill. July 25, 2013) ("[Defendant] has spent a better part of his Motion to Dismiss and Reply … arguing that [the plaintiff] has failed to make a 'similarly situated' argument …. However, the 'similarly situated' argument is an evidentiary standard applicable at the summary judgment stage; it is not a requirement in reviewing the sufficiency of the complaint."). Williams alleges in her Complaint and through her attached exhibits that she (1) was employed by the Defendant; (2) was harassed based on her race when another employee stated to her that "when you go black you never go back and when you are white, you are always right"; (3) engaged in protected activity by complaining to a supervisor about the harassment; (4) was subsequently terminated "within such a period of time as to raise an inference of retaliatory motivation." These allegations are sufficient to state claims

under Title VII for race discrimination and retaliation. Therefore, Williams may move forward with her Title VII race discrimination and retaliation claims against the Probation Department.

## II.        Section 1981 and Section 1983 Claims

Williams also proceeds against the County and Union Defendants under 42 U.S.C. § 1981 and against the County Defendants pursuant to 42 U.S.C. § 1983.[5] (Complaint, ¶¶ 9–10.)   Unlike Title VII claims, § 1981 and § 1983 claims do not require the plaintiff to first exhaust administrative remedies before bringing a suit in federal court. *Fane v. Locke Reynolds, LLP*, 480 F.3d 534, 539 (7th Cir. 2007) ("Whether [the plaintiff] exhausted her Title VII claims is immaterial, however, because [she] also sued under § 1981, which does not require a plaintiff to bring an EEOC charge before filing a claim in federal court."); *Trigg v. Fort Wayne Community Schools*, 766 F.2d 299, 302 (7th Cir. 1985) ("A plaintiff may sue his or her state government employer for violations of the Fourteenth Amendment through § 1983 and escape Title VII's comprehensive remedial scheme [and attendant exhaustion requirements], even if the same facts would suggest a violation of Title VII.") *Gray v. Lacke*, 885 F.2d 399, (7th Cir. 1989) (when underlying facts support both a Title VII and a constitutional deprivation claim, plaintiff can maintain an action under § 1983 and bypass the procedural requirements of Title VII).

Nevertheless, Williams's claims against the entity defendants must be dismissed for failure to state a claim.     Williams does not mention the Council 31 or Local 3477 in her Complaint or in the exhibits attached thereto.   Indeed outside of the case caption, the only reference to any labor organization in Williams's filings appears in her Intake Form, which is not part of the Complaint

---

[5] Williams cannot assert a section 1983 claim against the Union Defendants as Section 1983 liability applies only to alleged constitutional violations by state actors. *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 815 (7th Cir. 2009) (holding that even where state employer forces government employees to associate with a union "does not consequently make every union activity so imbued with governmental action that it can be subjected to constitutional restraints") (citations omitted); *see, e.g., Simms-Johnson v. Illinois Dept. of Human Services*, No. C 548, 2010 WL 5018523, at *2 (N.D. Ill. Dec. 2, 2010).

but was submitted as an attachment to Williams's response to the Defendants' Motion to Dismiss. In that form, Williams states that she "[w]ent to County Inspector General regarding harassment at work and home from Union Reps." (Dkt. No. 13, p. 4.)   This passing reference does not cure the deficiencies in her Complaint for several reasons.   First, it is an "axiomatic rule" that a plaintiff may not amend her complaint in her response brief.   *Pirelle Armstrong Tire Corp. Retiree Medical Benefits Trust v. Walgreen Company*, 631 F.3d 436, 448 (7th Cir. 2011); *see also Harrell v. United States*, 13 F.3d 232, 236 (7th Cir. 1993) (where a complaint "fails to state a claim even under the liberal requirements of the federal rules, the plaintiff cannot cure the deficiency by inserting the missing allegations in a document that is not either a complaint or an amendment to a complaint"); *see, e.g., Sullivan v. Alcatel-Lucent USA, Inc.*, No. 12 C 7528, 2013 WL 228244, at *3 (N.D. Ill. Jan. 22, 2013) (considering exhibits attached to plaintiffs' amended complaint, which formed the basis of many of the plaintiff's allegation, but refusing to "consider the attachments to the Plaintiffs' response [brief] because they are either not relevant to the resolution to the motion to dismiss or are not documents that the Court may consider when ruling on a Rule 12(b)(6) motion to dismiss").   Although plaintiffs are permitted to submit documents "which show that the complaint as worded encompasses a claim that would entitle [the plaintiff] to relief," *Harrell*, 13 F.3d at 236, Williams's Complaint in this case does not contain a single factual allegation against Council 31 or Local 3477.   Thus this is not a situation where a plaintiff has merely added supporting facts "that are consistent with the complaint" in order to demonstrate that she has alleged sufficient facts "within the scope of the complaint" to sustain a claim. *Early Bankers Life and Cas. Co.*, 959 F.2d at 79.   Accordingly, the Intake Form attached to Williams's response brief cannot form the basis of her claims against the Union Defendants.

Even if the Court were to consider the Intake Form, it would be insufficient to sustain a cause of action against the Union Defendants. Williams's statement that she "[w]ent to County Inspector General regarding harassment at work and home from Union Reps" was in response to the question, "If you claimed RETALIATION as your basis: State how you opposed unlawful discrimination." (Dkt. No. 13, p. 4) (capitalization in original). Thus it appears that the legal basis for Williams's claim against the Union Defendants is unlawful retaliation. In order to state a retaliation claim under § 1981, Williams must allege facts raising a plausible inference that there was a "causal connection" between her complaint of harassment and her termination. *See O'Leary v. Accretive Health, Inc.*, 657 F.3d 625, 630 (7th Cir. 2011). Here, Williams's Complaint and IDHR Intake Form are bereft of factual allegations implicating Council 31 and Local 3477. Williams does not allege that the Union Defendants took any adverse employment action against her based on her complaints to the County Inspector General. Indeed Williams has not alleged that the Union Defendants were even aware of her complaints, *See, e.g., Owens v. Enable Holdings*, 2012 WL 3638028, at *3 (N.D. Ill. Aug. 22, 2012) (dismissing plaintiff's § 1981 retaliation claim where plaintiff failed to allege that the defendant was aware of her complaints), nor has she identified the nature of the harassment or when it occurred. Williams's constitutional claims against the Union Defendants must therefore be dismissed. However, in light of Williams's status as a *pro se* litigant and reference to retaliation by union representatives her IDHR Intake Form, the Court cannot conclude that there is no factual basis for an unlawful retaliation claim against the Union Defendants. Therefore, the dismissal of Williams's § 1981 retaliation claim against Council 31 and Local 3477 is without prejudice.

With respect to the County Defendants, the factual allegations and attached documents make clear that only the Juvenile Probation Department was Williams's employer. Since Williams's employment relationship appears to be the basis of her § 1981 claim, the absence of an employment relationship leaves Williams unable to obtain relief from Cook County, the Office of the Chief Judge, and the Office of the Independent Inspector General under § 1981. *See, e.g., Mosley v. McDonald's Corp.*, No. 05 C 7290, 2008 WL 1883451, at *4 (N.D. Ill. Apr. 25, 2008); *Ulmer v. Elkhart County*, No. 3:02 CV 0560 PPS, 2005 WL 1910909, at *4 (N.D. Ind. Aug. 9, 2005). Furthermore, the Complaint contains no allegations of wrongdoing against Cook County, the Office of the Chief Judge, or the Office of the Independent Inspector General. Thus Williams's § 1981 claims against these defendants must also be dismissed.

Williams's constitutional claims against the County Defendants, including the Probation Department, must also be dismissed because Williams does not allege that any of the County Defendants' policies or customs caused her constitutional injury. To bring a § 1981 or § 1983 claim against a state actor, government entity, or municipality, a plaintiff must establish municipal liability as articulated *Monell v. Department of Soc. Serv.*, 436 U.S. 658, 694 (1978). *See Jett v. Dallas Independent Sch. Dist.*, 491 U.S. 701, 731–34 (1989) (holding as a matter of statutory interpretation that §1983 is the exclusive remedy in damages suits against state employees for § 1981 violations and that *Monell* applies); *Smith v. Chicago School Reform Bd. of Trustees*, 165 F.3d 1142, 1148 (7th Cir. 1999) (finding "[r]ecovery under § 1981 … problematic" where "although the accused perpetrators of discrimination are teachers and administrators at the schools where [the plaintiff] worked, the only defendant is the School Board, an agency of municipal government-and recovery against a governmental body under § 1981 may not be based on

*respondeat superior*"); *see also Everson v. City of Madison*, 672 F.Supp.2d 881, 882 (W.D. Wis. 2009) ("Under Title VII, an employer may be held liable using traditional agency principles, but under § 1983 the plaintiff must show that the employer's own unconstitutional actions caused the plaintiff's harm.") (citing *Phelan v. Cook County*, 463 F.3d 773, 788–89 (7th Cir. 2006)).   The same rule applies to any claims Williams seeks to bring against Rohan in his official capacity as the Probation Department's Chief Executive Officer. *Holloway v. Delaware County Sheriff*, 700 F.3d 1063, 1071 (7th Cir. 2012) ("Holloway sued the Sheriff in his official capacity, which is effectively the same as having brought suit against the County of Delaware itself.")   As Williams has not alleged a *Monell* claim, she cannot proceed under § 1981 or § 1983 against the County Defendants.

Williams's allegations are also insufficient to proceed against Rohan in his capacity as Williams's supervisor.   An individual supervisor may be personally liable under § 1981 or § 1983 only if the supervisor causes or participates in a constitutional deprivation. *Smith v. Bray*, 681 F.3d 888, 899 (7th Cir. 2012) (section 1981) (internal citations and quotations omitted); *Zimmerman v. Tribble*, 226 F.3d 568, 574 (7th Cir. 2000) (section 1983).   Under § 1981, the defendant's participation can be shown if the official "acts or fails to act with a deliberate or reckless disregard of plaintiff's constitutional rights, or if the conduct causing the constitutional deprivation occurs at [his] direction or with [his] knowledge and consent …." *McPhaul v. Bd. of Com'rs of Madison County*, 226 F.3d 558, 566 (7th Cir. 2000), *overruled on other grounds by Hill v. Tangherlini*, --- F.3d ----, 2013 WL 3942935 (7th Cir. Aug. 1, 2013).   Similarly under § 1983, the supervisor "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye." *Hildenbrandt v. Ill. Dep't of Natural Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) (citations omitted);

*see Smith v. Rowe*, 761 F.2d 360, 369 (7th Cir. 1985) (official that "knew of the actions of his subordinates which resulted in a constitutional violation" but "failed to take any preventative action" was considered "personally involved" for § 1983 purposes).

In this case, Williams alleges that she provided Rohan a copy of the memorandum describing her co-workers' racist remarks. Williams further alleges that Rohan confirmed receipt of Willams's complaint, responded that the "department does not condone such behavior" and that the "comments appear[ed] to be out of character for the individuals [Williams] attributed them to," and indicated that he had asked Young to contact her immediately to discuss whether to hold an investigatory meeting involving the two individuals against whom the charges were made. Finally, Williams alleges that an investigative interview was conducted in May 2009 with Young and Rose Marie Golden, the then-Human Resource Deputy for the Probation Department. This is where Williams's allegations against Rohan come to an end. The Complaint does not allege that Rohan facilitated, approved, consented to, condoned, or turned a blind eye to the harassment. Nor does Williams allege that Rohan failed to take preventative action or allowed the unlawful conduct to continue despite his awareness of it. *See, e.g., Brach v. City of Wausau*, 617 F.Supp.2d 796, 805 (W.D. Wis. 2009) ("[S]upervisors cannot be held liable [under § 1983] for mere 'knowledge and acquiescence' of their subordinates' unconstitutional acts.") (citing *Iqbal*, 556 U.S. at 676 (rejecting petitioner's theory of "supervisory liability" in which "a supervisor's mere knowledge of his subordinate's discriminatory purpose amounts to the supervisor's violating the Constitution")). Williams's claims against Rohan must therefore be dismissed. This dismissal, however, is without prejudice; the Court grants Williams leave to file an amended complaint if she is able to plausibly allege that Rohan caused, participated in, or turned a blind eye to the alleged

constitutional deprivation.

## III.    Illinois Worker's Compensation Act Claim

Lastly, Williams alleges the Defendants refused to honor the Illinois Worker's Compensation Act, 820 ILCS 305/4 ("IWCA").   Though Williams does not indicate which provision of the Act she believes the Defendants violated, her allegation, liberally construed, suggests that she seeks to assert a retaliation claim pursuant to 820 ILCS 305/4(h).   That section provides:

> It shall be unlawful for any employer, insurance company or service or adjustment company to interfere with, restrain or coerce an employee in any manner whatsoever in the exercise of the rights or remedies granted to him or her by this Act or to discriminate, attempt to discriminate, or threaten to discriminate against an employee in any way because of his or her exercise of the rights or remedies granted to him or her by this Act.

> It shall be unlawful for any employer, individual or through any insurance company or service or adjustment company, to discharge or threaten to discharge, or to refuse to hire or recall to active service in a suitable capacity an employee because of the exercise of his or her rights or remedies granted to him or her by this Act.

820 ILCS 305/4(h).

In order to prevail on a claim of retaliation under the IWCA, Williams must prove that "(1) she was an employee of the employer before or at the time of the injury; (2) she exercised a right granted by the IWCA and (3) her discharge was causally related to the exercise of that right under the Act." *Ridings v. Riverside Medical Center*, 537 F.3d 755, 772 (7th Cir. 2008).   In this case, Williams has sufficiently alleged that she was an employee of the Probation Department and that she exercised a right granted by the IWCA.   With respect to the third requirement, Williams alleges that her termination for failure to return from medical leave was unlawful because she was

on worker's compensation as of the date of her termination.    Construed liberally,[6] this allegation essentially asserts that Williams's discharge was causally related to her decision to seek benefits under the Act.    The Court finds this sufficient to move forward at this stage of the proceedings.

The County Defendants maintain that Williams is precluded from filing an IWCA claim in federal court because she entered a Settlement Contract Lump Sum Petition and Order (the "Settlement Contract"), which provides for her to receive a settlement amount of $47,226.65 in return for waiving any claims under the Illinois Worker's Compensation Act.    As an initial matter, the County Defendants raise the Settlement Contract for the first time in their Reply brief. Therefore the argument is waived at this stage of the proceedings. *Griffin v. Bell*, 694 F.3d 817, 822 (7th Cir. 2012) ("[A]rguments raised for the first time in a reply brief are deemed waived."). In addition, the County Defendants cite no support for the proposition that settlement of an employee's claim for payment of worker's compensation benefits immunizes the employer from subsequently filed causes of action alleging unlawful retaliation where the employer takes adverse action against the employee for exercising rights or remedies granted under the IWCA.    Indeed the case law evinces that ILCS 305/4(h) claims routinely move beyond the pleading stage despite the parties having previously entered a settlement contract. *See, e.g., Davis v. Olin Corp.*, 2005 WL 3455120, at *3 (S.D. Ill. Dec. 16, 2005); *Keesecker v. H.B. Fuller Co.*, 1994 WL 247112, at *1–3 (N.D. Ill. June 3, 1994); *Miller v. Illinois Bell Telephone Co.*, 2012 WL 6962904, at *3 (Ill. App. Ct. 2012); *Boelkes v. Harlem Consol. School Dist. No. 122*, 842 N.E.2d 790 (Ill. App. Ct. 2006).    Accordingly, Williams may move forward with her IWCA against the Probation Department.

---

[6] The Court has an obligation to construe Williams's pleadings liberally, *Anderson v. Hardman*, 241 F.3d 544, 545 (7th Cir. 2001), and a *pro se* litigant is not required to explicitly refer to the proper statute or legal theory in order to state a cause of action as long as relief is possible under that statute or theory consistent with the facts pled. *Kennedy v. National Juvenile Detention Ass'n*, 187 F.3d 690, 695 (7th Cir. 1999).

## CONCLUSION AND ORDER

For the reasons stated above, Council 31 and Local 3477's Motion to Dismiss is granted and the County Defendants' Motion to Dismiss is granted in part and denied in part. All claims against the Union Defendants, Cook County, the Office of the Chief Judge of the Circuit Court of Cook County, the Office of the Independent Inspector General of Cook County, and Michael Rohan are dismissed. However the dismissals of Williams's § 1981 and § 1983 claims against Rohan and § 1981 claim against the Union Defendants are without prejudice and with leave to file an amended complaint within 28 days of this Order if she is able to set forth causes of action against under those provisions. Williams's ADEA, Title VII national origin, color, and sex discrimination, § 1981, and § 1983 claims against the Probation Department are also dismissed. Williams may proceed with her Title VII race discrimination, Title VII retaliation, and IWCA claims against the Probation Department.

_____
Virginia M. Kendall
United States District Court Judge
Northern District of Illinois

Date: August 28, 2013