UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS – EASTERN DIVISION

| | | |
|---|---|---|
| PAULA Y. WILLIAMS, | ) | |
| | ) | No. 1:13-cv-01116 |
| Plaintiff, | ) | |
| | ) | Hon. Virginia M. Kendall |
| v. | ) | |
| | ) | Mag. Mary M. Rowland |
| OFFICE OF THE CHIEF | ) | |
| JUDGE OF THE CIRCUIT | ) | |
| COURT OF COOK COUNTY | ) | |
| and MICHAEL ROHAN, | ) | JURY DEMAND |
| | ) | |
| Defendants. | ) | |

## SECOND AMENDED COMPLAINT

Plaintiff PAULA Y. WILLIAMS, through her appointed counsel, brings this action against Defendants OFFICE OF THE CHIEF JUDGE OF THE CIRCUIT COURT OF COOK COUNTY and MICHAEL ROHAN.

### Jurisdiction and Venue

1. Plaintiff is alleging violations of her civil rights pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII"), and pursuant to 42 U.S.C. §§ 1981 and 1983. Plaintiff also asserts state law claims for breach of contract, estoppel, retaliatory discharge based on her exercise of rights under the Illinois Workers Compensation Act, 820 ILCS 305/4 ("IWCA"), and violation of the Illinois Whistleblower Act, 740 ILCS 174/1 ("Whistleblower Act").

2. This Court has jurisdiction over Plaintiff's federal claims pursuant to 28 U.S.C. § 1343, 42 U.S.C. §2000e-5(f), and 42 U.S.C. §§ 1981 and 1983.

3.     This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

4.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b) because Defendants reside in this district and a substantial part of the events or omissions giving rise to Plaintiff's claims occurred within this district.

## Parties

5.     Plaintiff Paula Y. Williams resides in Chicago, Cook County, Illinois.

6.     Defendant Office of the Chief Judge of the Circuit Court of Cook County ("Office of the Chief Judge") is the administrative arm of the Circuit Court of Cook County, Illinois. The Office of the Chief Judge contains various internal departments and offices, including the Cook County Juvenile Probation and Court Services Department (the "Juvenile Probation Department" or the "Department").[1]

7.     Defendant Michael Rohan was at all relevant times, until his resignation in May 2011, the Director of Court Services at the Juvenile Probation Department, and the chief executive officer of the Department. Until her termination, he was Plaintiff's supervisor. Defendant Rohan is sued in his individual capacity.

---

[1] On August 28, 2013, the Court dismissed, *inter alia*, all of Plaintiff's claims against the Office of the Chief Judge, based on defense counsel's representations that Plaintiff's employer was the Juvenile Probation Department. (Doc. 35 at 26, *see* Doc. 23 at 5). Thereafter, counsel for Defendants determined that the Office of the Chief Judge was, in fact, the proper entity to be sued. (Doc. 47 at 3, n. 1). Accordingly, the Court directed Plaintiff to substitute the Office of the Chief Judge as defendant in place of the Juvenile Probation Department. (Doc. 86 at 1).

## Administrative Prerequisites

8.     Plaintiff has met all of the administrative prerequisites prior to instituting these legal proceedings against the Office of the Chief Judge.

9.     Plaintiff filed a charge against the Juvenile Probation Department with the Illinois Department of Human Rights ("IDHR") and the Equal Employment Opportunity Commission ("EEOC") on October 12, 2011, alleging race discrimination and unlawful retaliation. On November 15, 2012, Plaintiff received her right-to-sue letter from the U. S. Department of Justice-Civil Rights Division stating that she had a right to institute a civil action against the Juvenile Probation Department under Title VII.

## Statement of Facts

10.     Plaintiff is an African-American woman and a citizen of the United States of America.

11.     Plaintiff was employed by the Office of the Chief Judge, in the Juvenile Probation Department, from on or about November 17, 1995 until her wrongful termination on or about August 31, 2011.

12.     At all times that she was working for the Office of the Chief Judge, Plaintiff fulfilled the requirements of her employment.

## December 2008 Racial Intimidation, Failure to Investigate, and Retaliation

13.     On or about December 4, 2008, Plaintiff was subjected to racial harassment and discrimination in the workplace at the Juvenile Probation Department. While working, Plaintiff was called to the office of another employee at

3

the Juvenile Probation Department, Robin Petchenik, who was being visited by another employee, Georgeanne Struss. During the ensuing conversation, Struss made a statement to Plaintiff to the effect that "when you go black you never go back and where you are white, you are always right." Plaintiff was deeply offended, shocked and hurt by this statement.

14. On or about December 8, 2008, Plaintiff provided a written complaint to Charles Young, Assistant Director of the Juvenile Probation Department, within the Office of the Chief Judge. Plaintiff memorialized the comment that was made and characterized it as "racial intimidation in the workplace." In her complaint, Plaintiff stated that the incident in no way seemed harmless, and that the racially charged comments were made "with the same venomous tone that I can only remember seeing on the television when Klu Klux Klan meetings were shown." Plaintiff reasonably believed this harassment to be a violation of state and federal law.

15. On or about December 10, 2008, Defendant Rohan sent Plaintiff a memo acknowledging receipt of Plaintiff's written complaint. Defendant Rohan stated that Young would contact her "immediately" so that he could "initiate an investigatory meeting involving the two officers."

16. At the Juvenile Probation Department's Christmas party, in December 2008, Defendant Rohan spoke to Plaintiff and told her that she should not communicate with anyone "outside the building" about the incident of racial intimidation.

4

17.     Defendant Rohan's statement at the Christmas Party that Plaintiff should not communicate with anyone outside the building about the incident of racial intimidation was an act of retaliation for her reporting of the incident, and was intended to discourage her from attempting to report the incident to appropriate agencies including the IDHR and the EEOC.

18.     Plaintiff was not contacted "immediately" about her complaint. It was not until several months later, in about May 2009, that Plaintiff was in fact interviewed about the incident of racial intimidation.

19.     Plaintiff was never notified, and has no knowledge, as to any findings, conclusions or actions taken because of the investigation of her complaint about the incident of racial intimidation. Since filing this lawsuit, Plaintiff has learned that, years after she made her complaint, and most likely after she made her charges of racial discrimination after she was terminated in 2011, Defendants manufactured an undated "report" of the "investigation" of her charges.

20.     During the period from about June 2009 to February 2010, Plaintiff was subjected to increased, unusual and disproportionate monitoring of her work by the Office of the Chief Judge, through the Juvenile Probation Department, including numerous case audits, errors in recording her training hours, and manufacturing of false complaints about Plaintiff's work product. The excessive monitoring and false charges caused Plaintiff severe emotional aggravation and distress.

5

21.     At all relevant times, Defendant Rohan's management of the Juvenile Probation Department, in which Plaintiff worked for the Office of the Chief Judge, led to an "old boy" atmosphere of cronyism and favoritism, in which certain employees were favored and their transgressions were overlooked, while other employees were disfavored and subjected to differential and unfair treatment. This atmosphere of "old boy" cronyism and favoritism fostered and led Defendant Rohan to condone incidents of discrimination based on race and/or sex. It also fostered retaliation against Office of the Chief Judge employees such as Plaintiff who "rocked the boat" by reporting unlawful acts of discrimination and other wrongdoing.

22.     The Defendants' delay in investigating Plaintiff's complaint, and their failure to make appropriate findings or take appropriate action, were consistent with and a product of the "old boy" atmosphere of favoritism, and constituted the condoning of the racial harassment of Plaintiff.

23.     The increased and disproportionate scrutiny of Plaintiff's work in 2009 and 2010 was itself discriminatory and constituted retaliation for her earlier reporting of the incident of racial harassment. The scrutiny and false accusations of wrongdoing evidences a discriminatory and retaliatory intent behind her ultimate termination in 2010.

24.     On information and belief, Defendant Rohan knew of the Office of the Chief Judge's failure to investigate Plaintiff's complaint in timely fashion, knew that the complaint was not being taken seriously, and knew of the discriminatory

and retaliatory monitoring of her caseload. This was part of his general practice and policy of cronyism and favoritism, and retaliation toward those who "rocked the boat."

## Office of the Inspector General Investigation

25.     In about March 2010, Plaintiff notified the Office of the Independent Inspector General for Cook County, Illinois (the "OIG") that Office of the Chief Judge personnel in the Juvenile Probation Department were improperly using workplace telephones on work time to make political phone calls. Plaintiff reasonably believed this activity to be a violation of state and federal law.

26.     The OIG conducted an investigation of Plaintiff's allegations, and interviewed her in about March 2010.

27.     Plaintiff does not know and was not notified about the findings or conclusions of the investigation of her complaint to the OIG, or about any actions taken as a result.

## Failure to Promote Plaintiff

28.     From December 2008 through May 2010, Plaintiff was qualified for promotion within her department at the Office of the Chief Judge, but Defendants' repeatedly failed to promote her when the opportunity presented itself. Defendants' failure to promote Plaintiff was based on her race, and was retaliatory for her reporting of racial harassment and her reporting of workplace misconduct to the OIG.

## Workplace Injury

29.     On about May 27, 2010, Plaintiff was physically injured at her workplace. While Plaintiff was holding a door handle, another employee in the Juvenile Probation Department, Anthony Jordan, yanked the door open violently with such a force that injured Plaintiff. Jordan's action fractured Plaintiff's shoulder and injured Plaintiff's arm and spine.

30.     As a result of her workplace injury, Plaintiff filed a petition with the Illinois Workers Compensation Commission against Cook County. Plaintiff also went on medical leave.

31.     Plaintiff was placed under the care of Dr. Ignas Labanauskas, an orthopedic surgeon.

32.     On about June 29, 2011, as part of his regular treatment, Dr. Labanauskas examined Plaintiff and issued a "work status report" stating that she was "unable to return to work until f/u [follow up visit] on 8/10/11 at 1:00 pm."

## Effort to Return to Work and Wrongful Termination

33.     On July 26, 2011, the Office of the Chief Judge, through human resources employee Rose Marie Golden, issued a letter to Plaintiff that stated that they had received an independent medical exam report from December 2010 clearing Plaintiff to return to work. The letter directed Plaintiff to return to work on August 2, 2011. The letter stated, *inter alia*, that failure to report to work would not cause her termination if Plaintiff had "an explanation acceptable to the Employer for such failure to report to work."

34.     On about August 1, 2011, Plaintiff was examined by a Cook County in-house physician, Dr. J. Mankowski, who issued a "Return to Work" form stating her opinion that Plaintiff could return to work on August 2, 2011, and advising Plaintiff to report to her personnel department. The "return to work" form also noted that Plaintiff's personal physician had concluded that she was "unable to return to work."

35.     On about August 2, 2011 the Cook County Department of Risk Management, a department of Cook County, Illinois, sent Plaintiff, through her workers compensation lawyer, V. Andrew Marzal, a letter advising that she had been cleared for full duty work and that her temporary total disability ("TTD") benefits were terminated as of August 1, 2011.

36.     On or about August 3, 2011, attorney Marzal sent Cook County's workers compensation attorney, Assistant States Attorney Jeremy Schwartz (an employee of the Office of the Chief Judge), a letter by fax enclosing Dr. Labanauskas's June 29, 2011 "off work note." Attorney Marzal stated "This is good through her next office visit on August 10, 2011," and demanded reinstatement of the TTD benefits. A true and correct copy of that communication is attached as Ex. A.

37.     Plaintiff then saw her treating physician, Dr. Labanauskas, as scheduled on August 10, 2011. Dr. Labanauskas prepared a work status report dated August 10, 2011, recommending that Plaintiff could return to work on

September 3, 2011. A copy of the August 10, 2011 work status report is attached as Ex. B.

38.     On August 16, 2011, attorney Marzal wrote attorney Schwartz a fax cover sheet enclosing Dr. Laubanauskas's August 10, 2011 report, and advising that Plaintiff would return to work on September 6, 2011, the Tuesday after the Labor Day weekend. A copy of the August 16, 2011 fax sheet is attached as Ex. C.

39.     Attorney Schwartz agreed that Plaintiff would not be required to return to work until the September 6, 2011 date. Attorney Schwartz at no time made any statement or response that Plaintiff would be required to return to work before September 6, 2011.

40.     Attorney Schwartz was duly authorized to act on behalf of the Office of the Chief Judge in all matters relating to Plaintiff's workers compensation claims, including negotiating Plaintiff's return to work date. At a minimum, Attorney Schwartz had apparent authority to negotiate Plaintiff's return to work date.

41.     In November 2011, Plaintiff and the Office of the Chief Judge, through its attorney, entered into a Settlement Contract concerning the workers compensation claims arising from her May 2010 workplace accident, which was later approved by the Illinois Workers Compensation Commission.

42.     Plaintiff's settlement contract memorializes that Plaintiff's "return to work date" was "09/07/2011." The agreement further specified that Plaintiff was "temporarily totally disabled … through 09/06/11" and calculated her workers

10

compensation benefits based on that date. A true and correct copy of that agreement is attached as Ex. D.

43.     Plaintiff was ready, willing and able to return to work duties on September 6, 2011 or September 7, 2011, as per her treating physician's orders and as per the agreement with Defendants.

44.     However, on August 30, 2011, Defendants wrongfully terminated Plaintiff's employment on the ground that she had not returned to work on August 2, 2011 and had abandoned her job.

45.     The Office of the Chief Judge, through Rose Marie Golden, sent Plaintiff a letter memorializing her termination dated August 30, 2011, which Plaintiff did not receive until August 31, 2011. The letter was copied to Defendant Rohan. The letter stated that "To date, I have not received any communication from you indicating your intention to return to work. You [sic] failure to return to work on August 2, 2011 and your failure to contact the department to request an extension of your leave, constitutes an implied resignation. Therefore we are considering your position to be vacant." A true and correct copy of the termination letter is attached as Ex. E.

46.     Plaintiff, through attorney Marzal, immediately sought to overturn the termination of her employment. Attorney Marzal explained that Plaintiff intended to return to work on September 6, 2011, and that she had reasonably expected to return to work on September 6, 2011 based on her treating physician's orders and the course of dealing with attorney Schwartz.

11

47.     In addition, Plaintiff filed a complaint for wrongful termination on August 31, 2011.

48.     Defendants nonetheless unreasonably refused to reverse the termination and/or reinstate Plaintiff's employment. Defendants also unreasonably refused to accept Plaintiff's explanation for her failure to report to work.

49.     The Defendants' termination of Plaintiff's employment on August 30, 2011 was wrongful.

50.     The Defendants' termination of Plaintiff's employment was contrary to the agreement that Plaintiff would return to work on September 6, 2011.

51.     The purported basis for Plaintiff's termination was an "implied resignation" based on her failure "to contact the department to request an extension of your leave." That is simply false. Plaintiff's attorney had in fact contacted the Office of the Chief Judge's attorney to request an extension of Plaintiff's workers compensation benefits as well as an extension of her return to work date. Both Defendants' agreement to the extension, and the agreement that Plaintiff was "totally disabled … through 09/06/11"  were ultimately memorialized in writing.

52.     Nonetheless, Defendants have refused and continues to refuse to reinstate Plaintiff's employment. Once Defendants' error was brought to their attention, Defendants still failed to reinstate Plaintiff.

53.     Defendants' erroneous termination of Plaintiff's employment and their arbitrary and irrational refusal to reinstate her employment were based on improper motives. Defendants' refusal to continue Plaintiff's employment is racially

discriminatory, and is retaliatory for her reporting of racial harassment, complaint to the OIG, and exercise of her rights under the Illinois Workers Compensation Act.

## COUNT I – BREACH OF CONTRACT

54.     Plaintiff restates by incorporation all the allegations of paragraphs 1 to 53.

55.     This count is brought against the Office of the Chief Judge.

56.     Plaintiff—through her attorney Andrew Marzal—and the Office of the Chief Judge—through its attorney Jeremy Schwartz—agreed that Plaintiff would return to work on September 6, 2011.

57.     The agreement was later memorialized in writing in the workers compensation settlement agreement which stated that Plaintiff's "return to work date" was "09/07/11" and which recognized that Plaintiff was "totally disabled … through 09/06/11." (Ex. D.)

58.     Plaintiff performed, or was ready, willing and able to perform, all the obligations required of her under the agreement.

59.     The Office of the Chief Judge breached its agreement that Plaintiff would return to work on September 6, 2011 by purporting to terminate her employment based on an "implied resignation" because she had not already returned to work. The letter also stated that the Office of the Chief Judge was "considering her position to be vacant" on August 30, 2011.

60.     The Office of the Chief Judge has refused to return Plaintiff to employment since then.

13

61. By entering into the settlement agreement providing that Plaintiff's "return to work date" was "09/07/11" and that she was "totally disabled ... through 09/06/11," the Office of the Chief Judge waived any claim that Plaintiff was required to return to work before September 2011, or that her failure to do so was an "implied resignation." The Office of the Chief Judge has also waived any claim that Plaintiff failed to request an extension of her return to work date or extension of her workers compensation benefits. The Office of the Chief Judge has waived the purported basis for terminating Plaintiff's employment, rendering her termination entirely arbitrary and without basis.

62. By entering into the settlement agreement providing that Plaintiff's "return to work date" was "09/07/11" and which recognized that Plaintiff was "totally disabled … through 09/06/11," the Office of the Chief Judge ratified the agreement by its attorney in August 2011 that Plaintiff would not be required to return to work before September 2011.

63. Plaintiff has suffered damages because of the Office of the Chief Judge's breach, including without limitation lost salary and benefits.

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor and against the Office of the Chief Judge for breach of contract, and award compensatory damages, costs, and whatever further relief this Court may deem appropriate.

## COUNT II – ESTOPPEL

64.     Plaintiff restates by incorporation all the allegations of paragraphs 1 to 53.

65.     This count is brought against the Office of the Chief Judge.

66.     The Office of the Chief Judge, through its attorney, represented to Plaintiff that she would not be terminated if she failed to report to work by August 2, 2011 if she had an explanation acceptable to the Office of the Chief Judge for her failure.

67.     Plaintiff relied on the Office of the Chief Judge's representation in that she failed to report for work by August 2, 2011 because she had a good explanation for not returning to work: her treating physician ordered her not to report to work until August 11, 2011 and then September 1, 2011, and these facts were reported to Defendant's attorney.

68.     Further, once Plaintiff's intention to report to work on September 6, 2011 was reported to the Office of the Chief Judge's attorney, neither the Office of the Chief Judge nor its attorney timely expressed any disagreement with that intention. The failure to respond took place under circumstances where a reasonable person would have construed that' silence as agreement, which is what Plaintiff did.

69.     On the contrary, the Office of the Chief Judge's attorney agreed and represented that Plaintiff would not have to report for work before September 6, 2011.

70.     Plaintiff further relied on the Office of the Chief Judge's representations and conduct when she prepared to return to work on September 6, 2011, and did not return before that date. Because of Plaintiff's detrimental reliance on the Office of the Chief Judge's promises, actions and omissions to act, Plaintiff lost her job and has lost salary and benefits.

71.     In the event that it is determined that the Office of the Chief Judge did not enter into a binding agreement that Plaintiff would not be required to return to work before September 6, 2011, the Office of the Chief Judge is estopped from asserting that Plaintiff was required to report to work before September 6, 2011.

72.     The Office of the Chief Judge is further estopped from denying that Plaintiff was temporarily totally disabled through September 6, 2011.

73.     Plaintiff is entitled to recover any and all damages incurred as a result of her termination based on her purportedly being required to return to work before September 2011.

74.     Plaintiff is entitled to recover any and all damages incurred as a result of her detrimental reliance, including all salary and benefits lost as a result of her wrongful termination.

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor and against the Office of the Chief Judge for estoppel, and award damages, costs, and whatever further relief this Court may deem appropriate.

## COUNT III – RETALIATORY DISCHARGE (IWCA)

75.     Plaintiff restates by incorporation all the allegations of paragraphs 1 to 53.

76.     This count is brought against the Office of the Chief Judge.

77.     At all relevant times, the Illinois Workers Compensation Act, 820 ILCS 305/4 was in effect, making it unlawful for any employer to discriminate against, discharge or refuse to recall to active service an employee because of her exercise of rights and remedies under the IWCA.

78.     The Office of the Chief Judge was an employer under the IWCA, and Plaintiff was an employee.

79.     The Office of the Chief Judge wrongfully terminated Plaintiff's employment by discharging her and/or refusing to recall her to active service based on her exercise of rights and remedies under the IWCA, including her filing a petition after her May 2010 injury, and her request to extend TTD benefits and extend her return to work date in August 2011.

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor and against the Office of the Chief Judge for retaliatory discharge, award Plaintiff lost income, wages and benefits, award compensatory damages and punitive damages if appropriate, award costs, and whatever further relief this Court may deem appropriate.

## COUNT IV – ILLINOIS WHISTLEBLOWER ACT

80.     Plaintiff restates by incorporation all the allegations of paragraphs 1 to 53.

81.     This count is brought against both Defendants.

82.     At all times relevant, the Whistleblower Act, 740 ILCS 174/1, was in effect, making it unlawful to retaliate or threaten to retaliate against an employee who discloses information concerning what the employee reasonably believes to be a violation of law in any proceeding or to any law enforcement agency.

83.     The Whistleblower Act, 740 ILCS 174/30, creates a private cause of action for violations of the Act.

84.     Defendants were employers under the Whistleblower Act, and Plaintiff was an employee.

85.     Defendants violated the Whistleblower Act by retaliating or threatening to retaliate against Plaintiff for her whistleblowing activity, including complaining of racial intimidation in the workplace and complaining to and being interviewed by the OIG.

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor and against Defendants for violation of the Whistleblower Act, direct the Office of the Chief Judge to reinstate Plaintiff with the same seniority status that she would have had, but for the violation, award Plaintiff back pay, and restore Plaintiff's full benefits as if she had never been terminated, award Plaintiff compensation for any damages sustained as a result of the violation(s), including litigation costs, expert

witness fees, and reasonable attorney's fees, and award whatever further relief this Court may deem appropriate.

## COUNT V – TITLE VII RACE DISCRIMINATION

86.     Plaintiff restates by incorporation all the allegations of paragraphs 1 to 53.

87.     This count is brought against the Office of the Chief Judge.

88.     Plaintiff was treated differently than similarly situated employees who are not African Americans.

89.     Plaintiff was subjected by the Office of the Chief Judge to disciplinary and adverse employment actions, including termination, because of her race.

90.     The Office of the Chief Judge discriminated against Plaintiff by denying her employment opportunities and then terminating her employment because of her race.

91.     The Office of the Chief Judge intentionally and knowingly discriminated against Plaintiff in the terms and conditions of her employment, including increased monitoring of her work, false allegations of poor work product, ultimately leading to her wrongful discharge from work.

92.     The Office of the Chief Judge's racially discriminatory employment practices concerning Plaintiff violated Title VII.

93.     The Office of the Chief Judge's discriminatory employment practices have denied Plaintiff her job, equal employment opportunities and other positive benefits of employment because of her race.

19

94.     As a direct result of the Office of the Chief Judge's discriminatory employment practices, Plaintiff has suffered mental pain and suffering and has been humiliated, embarrassed and otherwise mentally degraded.

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor and against the Office of the Chief Judge on her Title VII race discrimination claim and:

a)  Declare that the acts and practices complained of are violations of Title VII;

b)  Enjoin and permanently restrain the Office of the Chief Judge, and all persons in active concert or participation with the Office of the Chief Judge, from engaging in any employment practice which discriminates based on race;

c)  Direct the Office of the Chief Judge to make Plaintiff whole for all earnings and benefits she would have received but for its discriminatory treatment;

d)  Award Plaintiff back pay, prejudgment interest, and damages for all employment benefits she lost;

e)  Award Plaintiff compensatory damages, and punitive damages if appropriate;

f)  Award Plaintiff reasonable attorneys' fees, expenses and costs; and

g)  Award whatever further relief this Court may deem appropriate.

## COUNT VI – TITLE VII RETALIATION

95.     Plaintiff restates by incorporation all the allegations of paragraphs 1 to 53.

96.     This count is brought against the Office of the Chief Judge.

97.     Plaintiff was discriminated against because she opposed racially-discriminatory practices by reporting an incident of racial workplace harassment.

98.     Plaintiff was subjected to disciplinary and adverse employment actions because of her protected activity, including increased monitoring of her work, false allegations of poor work product, and ultimately termination of her employment.

99.     The Office of the Chief Judge's conduct was retaliatory, and caused Plaintiff to be denied employment opportunities and then terminated from employment.

100.    The Office of the Chief Judge's discriminatory conduct based on Plaintiff's reporting an incident of racial workplace harassment violated Title VII.

101.    As a direct result of Defendant's retaliation for Plaintiff's engaging in protected activities, Plaintiff has suffered mental pain and suffering and has been humiliated, embarrassed and otherwise mentally degraded.

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor and against the Office of the Chief Judge on her Title VII retaliation claim and:

a)  Declare that the acts and practices complained of are violations of Title VII;

b) Enjoin and permanently restrain the Office of the Chief Judge, and all persons in active concert or participation with the Office of the Chief Judge, from engaging in any employment practice which discriminates based on race;

c) Direct the Office of the Chief Judge to make Plaintiff whole for all earnings and benefits she would have received but for its discriminatory treatment;

d) Award Plaintiff back pay, prejudgment interest, and damages for all employment benefits she lost;

e) Award Plaintiff compensatory damages, and punitive damages if appropriate;

f) Award Plaintiff reasonable attorneys' fees, expenses and costs; and

g) Award whatever further relief this Court may deem appropriate.

## COUNT VII – § 1981 CLAIM

102. Plaintiff restates by incorporation all the allegations of paragraphs 1 to 53 and Count V.

103. This count is brought against Defendant Rohan.

104. Defendant Rohan intentionally discriminated against Plaintiff based on her race in violation of 42 U.S.C. § 1981 by:

a) Directly ordering her not to make further reports of racial intimidation at the workplace;

b)     Discriminating against Plaintiff, or causing her to be discriminated against, in the terms and conditions of her employment, by subjecting her to increased monitoring of her work, false allegations of poor work product, and ultimately terminating her employment; and

c)     Denying Plaintiff, or causing Plaintiff to be denied, employment opportunities and then terminating her employment because of her race.

105.   Defendant Rohan had knowledge of the Office of the Chief Judge's racially discriminatory practices against Plaintiff, and, knew that those practices were, in whole or in part, discriminatory.

106.   On information and belief, Defendant Rohan directed, encouraged, or failed to prevent practices that he knew were racially discriminatory toward Plaintiff. This allegation is based in part on Defendant Rohan's admonition to Plaintiff in December 2008 not to report the racial harassment outside the building and his arbitrary and irrational refusal to reverse Plaintiff's wrongful termination.

107.   Defendant Rohan, through the foregoing acts and omissions, deprived Plaintiff of her civil rights because of her race.

108.   At all times relevant herein, Defendant Rohan acted under color of state law.

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor and against Defendant Rohan on her § 1981 claim, award Plaintiff lost income, wages and benefits, award compensatory damages and punitive damages if

appropriate; award Plaintiff reasonable attorneys' fees, expenses and costs; and award whatever further relief this Court may deem appropriate.

## COUNT VIII – § 1983 CLAIM

109.    Plaintiff restates by incorporation all the allegations of paragraphs 1 to 53, and all the allegations of Counts V, VI and VII.

110.    This count is brought against Defendant Rohan.

111.    Defendant Rohan subjected Plaintiff, or caused Plaintiff to be subjected to, deprivations of her rights, privileges and/or immunities secured by the U. S. Constitution and laws, in that he:

a)    Violated or caused to be violated Plaintiff's right to free speech and free association as guaranteed by the First Amendment to the Constitution, including by ordering her not to report the racial intimidation at the workplace;

b)    Deprived Plaintiff, or caused her to be deprived, of equal protection of the laws based on her race;

c)    Without due process of law, deprived Plaintiff, or caused her to be deprived, of property consisting of her expectation of continued employment through September 6, 2011 while she was temporarily totally disabled from work and exercising her rights under the Illinois Workers Compensation Act;

112.     At all times relevant herein, Defendant Rohan acted under color of state law.

113.     Defendant Rohan's actions were intentional, willful, and malicious and/or in reckless disregard of Plaintiff's rights as secured under 42 U.S.C. §1983.

WHEREFORE, Plaintiff prays that this Court enter judgment in her favor and against Defendant Rohan on her § 1983 claim, award Plaintiff lost income, wages and benefits, award compensatory damages and punitive damages if appropriate; award Plaintiff reasonable attorneys' fees, expenses and costs; and award whatever further relief this Court may deem appropriate.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands trial by jury on all issues so triable.

Respectfully submitted,

By:     /s/ Jonathan B. Piper
        One of Plaintiff's attorneys

        Jonathan B. Piper
        Julia L. Titolo
        BOCK & HATCH LLC
        134 North La Salle Street, Suite 1000
        Chicago, IL 60602
        Telephone:  312/658-5500

July 22, 2014